1

2

3

4                                  UNITED STATES DISTRICT COURT

5                                NORTHERN DISTRICT OF CALIFORNIA

6

7        NAUTILUS INSURANCE COMPANY,                Case No. 23-cv-01886-HSG

8                          Plaintiff,              **ORDER GRANTING THE MOTION
                                                    TO TRANSFER VENUE**
9                    v.
                                                    Re: Dkt. No. 32
10       OUTDOORSY, INC., et al.,

11                         Defendants.

12

13            Pending before the Court is Defendant Outdoorsy, Inc.'s motion to transfer venue.  Dkt.

14     No. 32.  The Court finds this matter appropriate for disposition without oral argument and the

15     matter is deemed submitted.  *See* Civil L.R. 7-1(b).  For the reasons detailed below, the Court

16     **GRANTS** the motion.

17     **I.    BACKGROUND**

18            This insurance action arises from a tragic car accident:  Audrey Eginard was injured and

19     Aurelie Vincent died in a single vehicle accident while descending the Mauna Kea Access Road

20     on the Island of Hawaii in March 2017.  *See* Dkt. No. 1 ("Compl.") at ¶ 17.  Ms. Eginard had

21     rented the 2001 Nissan Xterra from Defendant Shawn Zenor, doing business as Huaka'i Campers,

22     through Defendant Outdoorsy's rental platform.  *Id.* at ¶¶ 3–4, 15–16.  Ms. Vincent was driving

23     the Xterra and Ms. Eginard was a passenger at the time of the accident.  *Id.* at ¶ 17.  In July 2018,

24     Ms. Eginard and the Estate of Ms. Vincent filed actions against Mr. Zenor, Huaka'i Campers, and

25     Outdoorsy in Hawaii State Court, alleging that the Xterra's brakes failed.  *See* Dkt. No. 1-3, Ex. C;

26     Dkt. No. 1-4, Ex. D.  These actions have since been consolidated into one case (the "underlying

27     Hawaii Action").

28            There are also two pending and overlapping insurance actions.  Plaintiff Nautilus Insurance

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Company issued an auto liability insurance policy to Outdoorsy.  *See* Compl. at ¶ 10; *see also* Dkt.

2    No. 1-1, Ex. A ("Nautilus Policy").  Nautilus is defending Outdoorsy in the underlying Hawaii

3    Action, but has reserved the right to seek (1) a declaration from a court regarding its rights under

4    the policy and (2) reimbursement for the defense of any uncovered claims.  Compl. at ¶¶ 20–22.

5    Nautilus accordingly brought this action, in which it contends that the Xterra was not covered

6    under the policy because it was not being used by a "named specified operator" or "specified

7    operator" at the time of the accident since Ms. Eginard—not Ms. Vincent—had rented the Xterra.[1]

8    *See id.* at ¶¶ 11–14, 23–47.  Non-party Progressive Direct Insurance Company issued an insurance

9    policy to Mr. Zenor.  *See* Dkt. No. 28 at 4.  But Progressive contends that the policy does not

10   afford any coverage for the underlying Hawaii Action because it excludes coverage for vehicles

11   when "leased or rented to others or given in exchange for any compensation."  *Id.*  Progressive

12   accordingly filed its own declaratory judgment action in the District of Hawaii against Mr. Zenor

13   and Nautilus, seeking a declaration that Nautilus is obligated to defend Mr. Zenor in the

14   underlying Hawaii Action.  *Id.*

15        Outdoorsy has filed a motion to transfer this action to the United States District Court for

16   the District of Hawaii pursuant to 28 U.S.C. § 1404(a).  *See* Dkt. No. 32.  Progressive has filed a

17   motion to intervene here, and like Outdoorsy seeks to transfer this action to the District of

18   Hawaii.[2]  Dkt. No. 28 at 6.

19   **II.    LEGAL STANDARD**

20        Where an action has been commenced in an improper venue, a court shall, upon hearing of

21   a timely motion, dismiss the action or, if deemed to be in the interest of justice, transfer it to

22   different venue where the case could have been properly brought.  28 U.S.C. § 1406.  Venue is

23

---

24   [1] A "named specified operator" is defined in the Nautilus Policy as the "'Outdoorsy, Inc. Member'
     whose name appears in the Outdoorsy, Inc. Reservation during the 'Rental Period' who is
25   properly licensed by the applicable legal authority to legally operate the rented or leased vehicle."
     *See* Nautilus Policy at 27.  And a "specified operator" is defined as "any driver who is fully
26   registered and meets all eligibility requirements of Outdoorsy, Inc. who is properly licensed by the
     applicable legal authority to legally operate the rented or leased vehicle."  *Id.* at 28.
27   [2] The District of Hawaii case is currently stayed pending resolution of the motion to transfer and
     motion to intervene before this Court.  *See Progressive Direct Insurance Company v. Nautilus*
28   *Insurance Company*, Case No. 1:23-cv-00260-DKW-KJM (D. Hawaii) at Dkt. No. 22.

2

1   proper where (1) "any defendant resides, if all defendants are residents of the State in which the

2   district is located"; (2) "a substantial part of the events or omissions giving rise to the claim

3   occurred"; or (3) where there is "no district in which an action may otherwise be brought . . . ." 28

4   U.S.C. § 1391(b).

5       Even where a plaintiff's chosen venue is proper, a defendant may petition the court for

6   transfer to a different district under 28 U.S.C. § 1404.  "For the convenience of the parties and

7   witnesses, in the interest of justice, a district court may transfer any civil action to any other

8   district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a).  The moving

9   party bears the burden of showing that the transferee district is a "more appropriate forum."  *See*

10  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000).  And the district court has

11  broad discretion in deciding whether to transfer an action.  *See Ventress v. Japan Airlines*, 486

12  F.3d 1111, 1118 (9th Cir. 2007) ("[T]he district court's decision to change venue is reviewed for

13  abuse of discretion.  Weighing of the factors for and against transfer involves subtle considerations

14  and is best left to the discretion of the trial judge.") (citations and quotations omitted).

15      The Court engages in a two-step analysis in deciding a motion to transfer under 28 U.S.C.

16  § 1404(a).  First, it determines "whether the transferee district was one in which the action 'might

17  have been brought' by the plaintiff."  *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960) (quoting 28

18  U.S.C. § 1404(a)).  If it is, the Court engages in an "individualized, case-by-case consideration of

19  convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting

20  *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  In this district, courts consider a range of

21  private interest factors (such as the plaintiff's choice of forum and the convenience of the parties,

22  witnesses, and evidence) and public interest factors (such as the familiarity of the court in each

23  forum with the applicable law, the feasibility of consolidation with other claims, any local interest

24  in the controversy, and the cost differential of litigation in the two forums).  *See, e.g., Jones*, 211

25  F.3d at 499; *Perez v. Performance Food Grp., Inc.*, No. 15-cv-02390-HSG, 2017 WL 66874, at *2

26  (N.D. Cal. Jan. 6, 2017).

27  **III.   DISCUSSION**

28      Outdoorsy requests that the Court transfer this action to the District of Hawaii under

1  § 1404.  Dkt. No. 32.

2  **A.  Whether This Action Could Have Been Initiated in District of Hawaii**

3  As an initial matter, the Court must determine whether this action could have been filed

4  initially in the District of Hawaii.  *See* 28 U.S.C. § 1404(a).  Nautilus argues that Hawaii would

5  have been—and remains—an improper venue.  *See* Dkt. No. 40 at 8–9.  Venue is proper in "a

6  judicial district in which a substantial part of the events or omissions giving rise to the claim

7  occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C.

8  § 1391(b)(2).

9  Nautilus couches this action as a simple "coverage dispute," and thus urges that "there are

10  no facts or other connections . . . that involves the state of Hawai'i."  Dkt. No. 40 at 9.  Nautilus

11  asserts that at the relevant time, Outdoorsy was domiciled in California, and says the policy was

12  therefore negotiated and executed in California.  *Id.*  Nautilus suggests that any questions about

13  the meaning of the policy implicate only California.  *Id.*  At bottom, Nautilus asks the Court to

14  assume that determining whether the underlying Hawaii Action is covered by the Nautilus Policy

15  will not require any consideration of the facts at issue in that case.  The Court rejects such a

16  narrow view.

17  Courts in this district have explained that to determine proper venue "[i]n an insurance

18  coverage action . . . a court looks to the underlying events for which coverage is sought."  *See*

19  *Carolina Cas. Co. v. Data Broad. Corp.*, 158 F. Supp. 2d 1044, 1047 (N.D. Cal. 2001) (collecting

20  cases); *Columbia Cas. Co. v. SMI Liquidating*, No. C 10-02057 CRB, 2010 WL 3037242, at *3

21  (N.D. Cal. July 30, 2010) (same); *cf. Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153,

22  1166 (10th Cir. 2010) (finding venue proper for insurance action in jurisdiction where alleged

23  damages or losses were incurred despite objection that underlying facts were irrelevant to

24  interpretation of the policy); *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 43–44 (1st Cir.

25  2001) (same).  Here, Nautilus filed this action for declaratory judgment that it does not owe

26  Defendants a duty to indemnify in the underlying Hawaii Action.  Key questions about the details

27  of the Xterra rental, including who was driving the Xterra at the time of the accident, and whether

28  the driver meets the definition of "named specified operator" or "specified operator" under the

4

United States District Court
Northern District of California

1    policy, inherently require consideration of the events that took place in Hawaii. Nautilus's

2    suggestion that a substantial part of the events giving rise to this case did not occur in Hawaii is

3    not well taken.

4              **B.    Whether Transfer Would Advance Interests of Justice**

5              Outdoorsy argues that transfer is appropriate because the underlying Hawaii Action is

6    already proceeding in Hawaii and Mr. Zenor, one of the Defendants in this case, lives there. *See*

7    Dkt. No. 32 at 6–12. Outdoorsy suggests that this Court may not be able to exercise personal

8    jurisdiction over him because he lives in Hawaii and has never listed vehicles for rent in

9    California. *See id.* at 8–9. Nautilus, in turn, again urges that this insurance action is simply a

10   matter of contract interpretation, and does not require consideration of the underlying Hawaii

11   Action at all. *See* Dkt. No. 40 at 9–14.

12             **i.    Plaintiff's Choice of Forum**

13             Ordinarily, "the defendant must make a strong showing of inconvenience to warrant

14   upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805

15   F.2d 834, 843 (9th Cir. 1986). However, "[t]he degree to which courts defer to the plaintiff's

16   venue choice is substantially reduced where the plaintiff's venue choice is not its residence or

17   where the forum lacks a significant connection to the activities alleged in the complaint." *See*

18   *Carolina*, 158 F. Supp. 2d at 1048 (citing cases); *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1156

19   (S.D. Cal. 2005) (same); *cf. Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (noting in the

20   context of a class action that "[i]f the operative facts have not occurred within the forum and the

21   forum has no interest in the parties or subject matter, [the plaintiff's] choice is entitled to only

22   minimal consideration").

23             Although Nautilus chose to file this case in the Northern District of California, its choice

24   of forum is entitled to less deference here because it is not a resident of this forum and the facts of

25   this case appear to have little connection to the district. Nautilus is incorporated under the laws of

26   the State of Arizona and its principal place of business is also in Arizona. *See* Compl. at ¶ 2.

27   Nautilus declares that California is nevertheless "unquestionably the location where the most

28   critical events relevant to the parties' coverage dispute occurred" because that is where Nautilus

United States District Court
Northern District of California

1   and Outdoorsy entered into the insurance policy. *See* Dkt. No. 40 at 4–5, 9–11. The only

2   evidence that Nautilus proffers, however, is that the Nautilus Policy lists Outdoorsy's address at

3   the time as in San Francisco, California.[3] *See id.* at 7; *see also* Nautilus Policy at 3. But the policy

4   likewise lists addresses for Nautilus in Scottsdale, Arizona and Atlanta, Georgia; for the insurance

5   producer in Media, Pennsylvania; and for the underwriting managers in Atlanta, Georgia. *See*

6   Nautilus Policy at 3–4.

7          Even if the Court were persuaded that the location where the policy was entered into was

8   relevant to this declaratory judgment action, there is no evidence before the Court supporting

9   Nautilus's conclusion that this occurred in California as opposed to Arizona, Georgia, or

10   Pennsylvania. Similarly, Nautilus offers no explanation or support for the suggestion that

11   negotiations over the policy generally occurred in California. Its bare assertion that California

12   "has numerous meaningful connections to the claims" in this case is not supported by the current

13   record. *See* Dkt. No. 40 at 12. This factor, therefore, is neutral.

14          **ii.     Familiarity with Applicable Law**

15          Nautilus also contends that this Court's familiarity with California law weighs against

16   transfer to the District of Hawaii. *See* Dkt. No. 40 at 10–11. The Nautilus Policy itself does not

17   contain a choice-of-law provision. Yet Nautilus concludes, with little explanation, that California

18   law applies. *Id.* Nautilus cites a single case, *Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d

19   803, 809 (9th Cir. 2019), in which the Ninth Circuit evaluated whether Washington law should

20   apply in an insurance coverage dispute. As part of this choice-of-law analysis, the Ninth Circuit

21   explained that several factors were relevant, including: "(1) the place of contracting; (2) the place

22   of negotiation; (3) the place of performance; (4) the location of the subject matter of the contract;

23   and (5) the residence, place of incorporation, and place of business of the parties." *Id.* Nautilus

24   concludes that "the location of the subject matter of the contract" is the most important factor, and

25   urges that this means the Court should focus on the parties to the contract and not the location of

26

27   [3] In 2018, Outdoorsy relocated its headquarters to Austin, Texas. *See* Dkt. No. 1-1 ("Sanders Decl.") at ¶ 3. The parties thus appear to agree that Outdoorsy is *currently* a corporation

28   organized under the laws of Delaware with its principal place of business in Austin, Texas. *See* Compl. at ¶ 3.

United States District Court
Northern District of California

the personal injuries that triggered the assertion of coverage.  *See* Dkt. No. 40 at 10–11.

Neither party actually engages in the (analytically complex) choice-of-law

analysis.  *Compare id.* at 10–11, *with* Dkt. No. 42 at 5–6.  But Nautilus oversimplifies the factors

discussed in *Ingenco*, and what "the location of the subject matter of the contract" means.  In

*Ingenco*, the plaintiff filed a property damage and business interruption insurance claim after a gas

purification plant in Washington was forced to shut down following a mechanical failure.

*Ingenco*, 921 F.3d at 807–08.  In analyzing the location of the subject matter of the contract, the

Ninth Circuit did not look to the location of the parties.  Rather, it considered the nature of the

insurance policy itself.  The Ninth Circuit acknowledged that the policy covered thirteen locations

in Virginia and one location in Washington.  *Id.* at 811.  But the Court found it significant that

coverage for the facility in Washington "dwarf[ed] the combined coverage amounts of all

seventeen other facilities . . . ."  *Id.*

Here, the Nautilus Policy, which provides coverage for personal injury and property

damage, does not appear limited to any specific state or location.  Rather, the "coverage territory"

includes, *inter alia*, "[t]he United States of America."  *See* Nautilus Policy at 14.  So even

assuming this factor was dispositive as Nautilus suggests, it is not clear that California law would

apply to this case.  Moreover, the Court notes that "federal judges routinely interpret other states'

laws during their tenure on the bench."  *See Hunt v. Ameritas Life Ins. Corps.*, No. 4:19-CV-

01657-JSW, 2019 WL 7666755, at *4 (N.D. Cal. Sept. 25, 2019).  This factor is also neutral.

### iii.    Convenience of Parties and Witnesses

Outdoorsy urges that the convenience of both the parties and witnesses favors transfer to

the District of Hawaii.  *See* Dkt. No. 32 at 8–11.  The Court agrees.

Shawn Zenor, the only individual party in this case, is a resident of Hawaii.  *See* Compl. at

¶ 4.  Although Mr. Zenor has not yet appeared,[4] Outdoorsy has proffered a declaration explaining

---

[4] Nautilus suggests that it intends to move for default judgment against Mr. Zenor.  *See* Dkt. No. 40-at ¶¶ 4–5.  However, default has not been entered.  It is also not clear that Mr. Zenor has been properly served.  He appears to have been served through substituted service at an address in Hilo, Hawaii.  *See* Dkt. No. 39.  The proof of service says that Lauri Sagle, listed as "Girlfriend of Defendant," was served on August 31, 2023.  *See id.*  But there is no explanation regarding prior attempts to serve Mr. Zenor personally before attempting substituted service at this location.  Nor

United States District Court
Northern District of California

that Mr. Zenor "has used Outdoorsy's platform to list vehicles for rent in Hawaii since 2016," but "[h]e has never listed vehicles in California." *See* Dkt. No. 32-1 at ¶ 5. In response, Nautilus has not identified any connection that Mr. Zenor has to this district. Consequently, it is not clear that the Court has personal jurisdiction over him even if he were properly served. *See* Dkt. No. 32 at 8–9. The Court also is not persuaded by Nautilus's suggestion that Mr. Zenor will play a minimal role in this case. *See* Dkt. No. 40 at 12 ("[H]is testimony is not critical to the determination of this coverage dispute."). Nautilus chose to sue Mr. Zenor, and one of the key disputes appears to be whether Mr. Zenor's Xterra was covered under the Nautilus Policy. Any communications that Mr. Zenor had with Ms. Eginard or Ms. Vincent also may be relevant to this dispute.

On the other hand, none of the other parties to this case are located in California: Nautilus is incorporated under the laws of Arizona with its principal place of business in Arizona, and Outdoorsy is incorporated in Delaware with its principal place of business in Texas.[5] *See* Compl. at ¶¶ 2–3. As corporations, both Nautilus and Outdoorsy would be better able to absorb the costs of litigating in Hawaii than Mr. Zenor would be able to absorb the costs of litigating in California. Notably, both Nautilus and Outdoorsy are *already* litigating the underlying Hawaii Action in Hawaii. *See id.* at ¶¶ 20–22.

As for non-party witnesses, "[t]he relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)." *See Saleh*, 361 F. Supp. 2d at 1160 (quotation omitted). "In determining whether this factor weighs in favor of transfer, the court must consider not simply how many witnesses each side has and the location of each, but, rather, the court must consider the importance of the witnesses." *Id.* at 1160–61.

Outdoorsy urges that Ms. Eginard will be a primary witness in this case. *See* Dkt. No. 32 at 10–11. She has information regarding the nature of the rental agreement, the vehicle, and the accident. And although she is a resident of France, Ms. Eginard is currently represented by counsel in the underlying Hawaii Action. As already discussed above, determining whether the

---

is there any explanation as to why the process server believed Ms. Sagle was Mr. Zenor's girlfriend and authorized to accept service on his behalf.
[5] Progressive, which seeks to intervene so it can also move to transfer this case to Hawaii, is an Ohio corporation with its principal place of business in Ohio. *See* Dkt. No. 28 at 3–6.

United States District Court
Northern District of California

United States District Court
Northern District of California

1 Xterra and the accident are covered under the Nautilus Policy will require at least some

2 consideration of the nature of the rental and the accident itself.

3     In response, Nautilus suggests that the most important witnesses will actually be its own

4 corporate representatives and those of Outdoorsy. *See* Dkt. No. 40 at 9–10, 12–13.  Yet Nautilus

5 provides no information about who these witnesses are, what they would testify to, or any

6 precision about where they are located.  In its opposition brief, Nautilus vaguely indicates that

7 aside from Mr. Zenor "[a]ll other witnesses are located in either Texas or New York/New Jersey."

8 *See id.* at 13.  This is not enough, on its own, for the Court to conclude that the convenience of

9 these unidentified witnesses outweighs the convenience to Ms. Eginard.  The Court therefore finds

10 that this factor weighs strongly in favor of transfer.

11          **iv.     Access to Evidence**

12     The Court agrees with Nautilus that "the ease of access to documents does not weigh

13 heavily in the transfer analysis, given that advances in technology have made it easier for

14 documents to be transferred to different locations." *Hunt*, 2019 WL 7666755, at *4 (quotation

15 omitted).  The Court has no reason to believe that documentary evidence is more accessible in

16 Hawaii than in California.  This factor is neutral.

17          **v.     Feasibility of Consolidation with other Claims**

18     Outdoorsy urges that transferring this case to the District of Hawaii would allow

19 consolidation with Progressive's own declaratory judgment action. *See* Dkt. No. 32 at 11.  The

20 Court agrees that judicial economy is better served by having these insurance matters in a single

21 forum before a single judge.  However, the Court does not give this factor substantial weight since

22 it seems clear that all parties are looking for a purported strategic advantage in selecting the forum

23 in which they litigate these insurance cases.  And at least at present, there is no risk of inconsistent

24 judgments since the Progressive action before the District of Hawaii case is stayed pending

25 resolution of the motion to transfer and motion to intervene before this Court. *See Progressive*

26 *Direct Insurance Company v. Nautilus Insurance Company*, Case No. 1:23-cv-00260-DKW-KJM

27 (D. Hawaii) at Dkt. No. 22.

28                         *     *     *

1    Having reviewed the relevant factors, the Court finds that transfer of venue to the District

2   of Hawaii would serve the convenience of the parties and witnesses and would promote the

3   interests of justice.

4   **IV.    CONCLUSION**

5    The Court exercises its discretion and **GRANTS** the motion to transfer.  The Clerk is

6   directed to transfer this action to the United States District Court for the District of Hawaii and to

7   close the case.

8    **IT IS SO ORDERED.**

9   Dated:     11/7/2023

10

11   HAYWOOD S. GILLIAM, JR.
    United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10